A03A1664. THE STATE v. WILLIAMS.
(590 SE2d 151)

ANDREWS, Presiding Judge.

The State appeals from the trial court's order granting Thomas Shane Williams's motion to suppress evidence of methamphetamine found by police during a traffic stop and search of a vehicle in which he was a passenger. For the following reasons, we reverse.

Based on evidence of methamphetamine found in the search, Williams and the driver of the vehicle, Robert A. St. John, were jointly charged with possession of methamphetamine with intent to distribute. Williams moved to suppress the methamphetamine on the basis that the consent to search the vehicle given by St. John was the product of: (1) an illegal stop, or (2) an illegally expanded detention during a valid stop. After a hearing, the trial court granted Williams's motion finding that the police officer's initial stop of the vehicle was valid, but that the consent to search the vehicle was invalid because it was the product of an unlawful detention during an improper expansion of the scope and duration of the stop.

There being no dispute over the facts relevant to the trial court's ruling, the court's application of the law to the undisputed facts is subject to de novo review. *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994). Testimony produced at the hearing on the motion to suppress showed the following facts. In the early morning hours

after midnight, Officer Spriggs of the Forsyth County Sheriff's Department received a call from fellow officer Hunter, who was patrolling in the same area. Hunter told Spriggs that he had just investigated a truck parked on the side of Georgia 400 occupied by two men who had been drinking and who stated they were not going to move the truck. Officer Hunter testified at the hearing that both men in the truck admitted to him they had been drinking, and that he saw the passenger drop an open container of beer. Officer Hunter concluded the driver, St. John, "didn't look that bad," so he advised him to stay there until he thought he could drive. At that point, Officer Hunter said he was unsure whether or not the driver was under the influence of alcohol, but he decided there were no offenses as long as the truck remained parked. However, Officer Hunter radioed Officer Spriggs with the information about his encounter with the truck, and told Spriggs to be on the lookout if he saw the truck on the road. A short time later, Officer Spriggs saw a similar truck being driven on Georgia 400 and stopped it for a traffic violation because the tag was improperly displayed in the rear window and was partially obscured. After Officer Spriggs stopped the truck, Officer Hunter arrived and confirmed it was the same truck.

Officer Spriggs approached the truck in which St. John was the driver and Williams was the sole passenger and asked both men for identification, and both men produced a driver's license. The officer took the licenses to his patrol car to run a computer check on the status of St. John's driver's license and to check for the existence of outstanding warrants on both men. Although no outstanding warrant was found on Williams, the computer showed an outstanding Forsyth County warrant on St. John. The officer immediately radioed his dispatch center to confirm the existence of the warrant and to have it pulled from the files, but dispatch center personnel informed the officer they were unable to locate the warrant. Because of the delay caused by this process, about 17 minutes passed before Officer Spriggs returned to the truck. When the officer returned to the truck, he asked St. John to step out of the vehicle because he had been "moving around kind of frantically inside the car," for reasons the officer could not determine, and the officer wanted to "put distance between him and the passenger." The officer told St. John about the Forsyth County warrant and informed him that he was not going to arrest him on the warrant because he could not confirm whether or not it was valid. He recommended to St. John that he later contact the sheriff's department to clear up the matter. In response, St. John volunteered to the officer that he might also have an outstanding warrant on him in Stephens County. The officer then radioed the dispatch center to check on the possible existence of an outstanding Stephens County warrant on St. John.

While Officer Spriggs was waiting for a response on the possible Stephens County warrant, he informed St. John that he had stopped him for an improperly displayed tag. St. John launched into an explanation in which he told Officer Spriggs how he had previously been stopped for not displaying the tag, and related how the officer at the prior stop had allowed him to produce the tag and temporarily fix it in the rear window without issuing him a ticket. At that point, based on information Officer Spriggs had obtained from Officer Hunter about the prior encounter with the truck, Spriggs also asked St. John if he had been drinking and if there were any open containers of alcohol in the truck. St. John responded that Officer Hunter may have seen Williams drop a bottle of beer in the truck, and he told Officer Spriggs there was a bottle of "Grand Marnier" alcoholic beverage in the truck. Based on this admission and the officer's prior knowledge that both occupants of the vehicle had been drinking, Officer Spriggs requested that St. John take an alco-sensor test (which he passed) and asked for and obtained St. John's consent to search the truck for intoxicants. The ensuing search, which took place about 26 minutes after the vehicle was stopped, produced a bag of methamphetamine.

Under the Fourth Amendment, searches and seizures by government agents must be reasonable. Because a routine traffic stop, even one based on probable cause of a traffic code violation, is a type of seizure more akin to an investigative stop under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), than a formal arrest, we apply the principles of *Terry* when analyzing the Fourth Amendment requirement that the scope and duration of the investigation conducted during a valid stop must be reasonable under the circumstances. *Vansant*, 264 Ga. at 320. Moreover, when police make a traffic stop, as a practical matter, not only the driver of the stopped vehicle but also any passengers are detained during the stop and are considered "seized" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U. S. 806, 809-810 (116 SC 1769, 135 LE2d 89) (1996); *United States v. Roberson*, 6 F3d 1088, 1091 (5th Cir. 1993). Accordingly, as a passenger in the stopped vehicle, Williams was entitled to the benefit of Fourth Amendment reasonableness requirements applicable to the temporary seizure of his person.[1]

It is undisputed that Officer Spriggs made a valid traffic stop

---

[1] The trial court found that Williams had standing to contest the search of the vehicle. Because the State does not challenge this ruling on appeal, we do not address the issue of whether Williams had standing to contest the search of the vehicle in which he was a passenger. See *State v. Cooper*, 260 Ga. App. 333, 334-335, n. 9 (579 SE2d 754) (2003); but see *Rakas v. Illinois*, 439 U. S. 128, 143-144, n. 12 (99 SC 421, 58 LE2d 387) (1978); *Burgeson v. State*, 267 Ga. 102, 105-106 (475 SE2d 580) (1996).

based on his observation that the vehicle had an improperly displayed tag in violation of OCGA § 40-2-41. Under *Terry*, an officer's actions taken during a valid traffic stop must be reasonably related in scope to the circumstances which justified the stop in the first place, and limited in duration to the time reasonably necessary to accomplish the purpose of the stop. *Terry*, 392 U. S. at 18-20; *State v. Gibbons*, 248 Ga. App. 859 (547 SE2d 679) (2001); *Bell v. State*, 248 Ga. App. 254, 256-257 (546 SE2d 34) (2001); *Almond v. State*, 242 Ga. App. 650, 652 (530 SE2d 750) (2000). Of course, during a valid traffic stop, an officer may ask questions not reasonably related to the circumstances which justified the stop where such questions are supported by reasonable suspicion of other criminal activity. *Bell*, 248 Ga. App. at 257. In the present case, the trial court suppressed evidence of methamphetamine found in the consent search on the basis that the license check and outstanding warrant checks run by the officer on St. John and Williams unreasonably expanded the scope and duration of the traffic stop in violation of the Fourth Amendment, and that St. John's consent was invalid as the product of this violation.

To the contrary, we find that neither the scope nor the duration of the stop was unreasonably expanded by the officer's computer checks to determine the status of St. John's driver's license and to determine whether St. John or Williams had outstanding warrants against them. We have recognized that it does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration. *Sutton v. State*, 223 Ga. App. 721, 723 (478 SE2d 910) (1996); *Delaware v. Prouse*, 440 U. S. 648, 657-659, 663 (99 SC 1391, 59 LE2d 660) (1979). We find it was also reasonable for the officer to request identification from Williams, the passenger, and to run a computer check on St. John and Williams for outstanding warrants.

Checking for outstanding warrants or criminal histories on the occupants of a vehicle at a valid traffic stop is justified by concern for officer safety during the stop. Police officers put their lives at risk when they approach occupied vehicles at routine traffic stops, and every year officers are the victims of shootings and other assaults by motorists at these stops. *Maryland v. Wilson*, 519 U. S. 408, 413 (117 SC 882, 137 LE2d 41) (1997); *United States v. Holt*, 264 F3d 1215, 1221-1223 (10th Cir. 2001); *United States v. Purcell*, 236 F3d 1274, 1278 (11th Cir. 2001). The presence of passengers in a stopped vehicle increases the officers' risks. *Wilson*, 519 U. S. at 413-414. Moreover, these risks do not depend on the subjective concerns of a particular officer, but are inherently part of the objective circumstances

confronting officers at traffic stops. *Ohio v. Robinette*, 519 U. S. 33, 38 (117 SC 417, 136 LE2d 347) (1996). These risks create a strong interest in officer safety that justifies reasonable safety measures that minimally intrude upon the Fourth Amendment privacy expectations of motorists. *Wilson*, 519 U. S. at 415, and *Pennsylvania v. Mimms*, 434 U. S. 106, 110-111 (98 SC 330, 54 LE2d 331) (1977) (concern for officer safety at traffic stop justifies allowing officer to order the driver and passengers out of the vehicle, regardless of suspicion of criminal activity); *United States v. Hensley*, 469 U. S. 221, 235 (105 SC 675, 83 LE2d 604) (1985) (officers at traffic stop "were authorized to take such steps as were reasonably necessary to protect their personal safety"). Background checks on vehicle occupants for outstanding warrants or criminal histories allow officers to better determine whether a detained motorist poses an increased risk for violent behavior during the stop, and whether backup or other safety measures may be prudent. *Holt*, 264 F3d at 1221-1222. Even though such checks are not related to the circumstances which justified the stop, they are motivated by officer safety issues inherent in the stop. They are not investigations intended to probe for concurrent criminal activity at the stop and do not alter the fundamental nature of the stop. Accordingly, these checks are minimally intrusive safety measures that do not unreasonably expand the scope of a valid traffic stop or its duration, as long as under the circumstances they do not unreasonably prolong the stop. Id. at 1221; *Illinois v. Gonzalez*, 204 Ill.2d 220, 222-236 (789 NE2d 260) (2003); *Purcell*, 236 F3d at 1277-1279.[2]

Our review of the record and the videotape of the stop shows that, after making the stop, Officer Spriggs immediately requested and obtained the driver's licenses from St. John and Williams, ran a computer check from his patrol car on the status of St. John's license, and ran outstanding warrant checks on St. John and Williams. An outstanding warrant was found against St. John, but nothing was found against Williams. The delay of approximately 17 minutes before the officer returned to the stopped vehicle was caused by the officer's reasonable effort to confirm whether or not the apparent

---

[2] As to passengers in the stopped vehicle, who are detained by the stop but are not suspected of any violation or other criminal activity, the officer may ask for identification but may not convey any message that a response is required. See *Gonzalez*, 204 Ill.2d at 235-236; compare *Holt v. State*, 227 Ga. App. 46 (487 SE2d 629) (1997) (unsuspected passenger's refusal to give accurate identification to officer was not a basis for an obstruction charge), and *Edgell v. State*, 253 Ga. App. 775, 777-778 (560 SE2d 532) (2002) (officer at traffic stop may not detain passenger in vehicle absent reasonable suspicion of criminal activity, and may not conduct a *Terry* pat-down absent reasonable belief that the passenger is armed and poses a danger). Although an officer may not take the passenger's mere refusal to answer as providing reasonable suspicion of other criminal activity, see *Terry*, 392 U. S. at 34 (White, J., concurring), the refusal may lead the officer to take additional safety precautions.

warrant against St. John was valid. See *Williams v. State*, 233 Ga. App. 70, 71-72 (503 SE2d 324) (1998) (officer's 35-minute computer check for outstanding warrants on driver at traffic stop was reasonable because the driver's common name extended the time necessary to complete the check). After informing St. John that he would not be arrested on the warrant because the officer could not confirm that it was valid, the duration of the stop was again prolonged when St. John volunteered to the officer that he may have another outstanding warrant against him which the officer had not discovered. While Officer Spriggs was making further reasonable efforts to confirm whether that warrant was valid, he informed St. John that he was stopped for an improperly displayed tag, and he asked St. John if he had been drinking and if he had any open containers of alcohol in the vehicle. The conversation about the tag was clearly related to the circumstances which justified the initial stop. Although questions about alcohol consumption and open containers were not related to the reason given for the stop, they were justified by reasonable suspicion based on the information Officer Spriggs had obtained about Officer Hunter's prior encounter with the vehicle. *Powers v. State*, 261 Ga. App. 296, 301 (582 SE2d 237) (2003). After St. John responded by admitting that an open container of beer was dropped in the presence of Officer Hunter, and that he had another bottle of alcoholic beverage in the truck, it was reasonable for Officer Spriggs to continue his investigation by asking for consent to search the truck for intoxicants. In any event, Williams does not contend the alcohol-related questions were unreasonable, nor did the trial court find they were unsupported by reasonable suspicion.

Under these circumstances, we find that the consent to search was voluntary and not the product of an illegally expanded traffic stop. The fact that St. John's consent did not occur until about 26 minutes after the vehicle was stopped was not the result of anything the officer did to unreasonably extend the scope or duration of the stop. *Williams*, 233 Ga. App. at 71-72. Even though 26 minutes into the stop the officer had not yet written St. John a ticket for the improperly displayed tag, the officer was not required to write the ticket and conclude the stop prior to diligently completing the background checks and investigating his reasonable suspicions regarding alcohol and open containers. See *State v. Johnson*, 209 Ga. App. 84, 86 (432 SE2d 580) (1993) (inquiry into duration of *Terry* stop focuses on whether officer diligently pursued the investigation). We find no basis for concluding that the officer did not diligently pursue the investigation or that he postponed writing the traffic ticket while engaging in activity that unreasonably expanded the duration or scope of the stop. Compare *Gibbons*, 248 Ga. App. at 868-869 (Ruffin, J., concurring specially).

The trial court's reliance on our opinion in *State v. Swords*, 258 Ga. App. 895 (575 SE2d 751) (2002), to support its ruling that the computer checks conducted by Officer Spriggs improperly expanded the scope and duration of the traffic stop is misplaced. In *Swords*, the facts showed that a valid traffic stop based on reasonable suspicion of a tag violation had concluded when the officer determined there was no violation. Id. at 896. In the absence of any evidence of consent or reasonable suspicion of other criminal activity, we found additional detention and questioning of the driver regarding license, insurance, or other violations were improper. Id. at 896-897. Once a valid traffic stop has concluded, any additional detention and questioning must be based on consent or reasonable suspicion of other criminal activity. Id.; *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002). In the present case, the computer checks run by the officer were diligently pursued during the course of a valid traffic stop.

*Judgment reversed. Barnes and Adams, JJ., concur.*

DECIDED OCTOBER 29, 2003 —
RECONSIDERATION DENIED NOVEMBER 18, 2003 — 

*Penny A. Penn, District Attorney, Sandra A. Partridge, James A. Dunn, Assistant District Attorneys*, for appellant.

*Banks, Stubbs, Neville & Cunat, Rafe Banks III*, for appellee.