### A04A1135. THE STATE v. JOYNER.
(607 SE2d 184)

PHIPPS, Judge.

After a traffic stop, Charles Joyner was charged with driving without a license. The trial court granted his motion to suppress evidence supporting the charge, and the state appeals. Because the record shows that the evidence was obtained while Joyner was illegally detained, we affirm.

In reviewing a trial court's order on a motion to suppress evidence, we construe the evidence most favorably to uphold the trial court's findings and judgment.[1] The trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

The sole witness at the suppression hearing was the police officer who initiated the traffic stop. The officer testified on direct examination that at about 5:50 p.m. on March 4, 2002, using a computer in his patrol car, he "r[a]n a random tag check" on the vehicle ahead of him. The officer recalled that "the query registration returned that the tag did not exist. . . . No other information showed up on the screen. So I had no way to verify that that vehicle — that that tag was actually registered to that vehicle." The officer stopped the vehicle and approached the driver, Joyner. The officer testified,

> I asked him if I could see his registration and tag information, as I was not able to verify anything through my computer. Mr. Joyner handed me that information. I also asked if I could see his driver's license and insurance card at that time. Mr. Joyner said that he . . . did not have a driver's license. It was suspended. I asked him to stand by for a

---

[1] *State v. Gibbons,* 248 Ga. App. 859, 860 (1) (547 SE2d 679) (2001).
[2] *Vansant v. State,* 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

moment. I went back to my vehicle, checked the license, and it did return suspended. . . .

On cross-examination, the officer clarified that he requested the driver's license after he reviewed the registration documentation and confirmed compliance with the vehicle registration laws.

Q: . . . I believe you said that . . . you stopped the vehicle and you checked the tag registration to verify if the tag that was on the vehicle belonged to the vehicle?
A: I asked the driver if he could produce the registration form that goes along with a tag to verify that that tag did belong to that vehicle.
Q: All right. And *after* he gave you the registration and *after* — to the vehicle and the information regarding the tag and you verified that the tag did, in fact, belong to the vehicle, you said that you *then* asked for his driver's license and he gave you an ID card?[3]
A: That's correct, sir.

At the suppression hearing, Joyner's counsel argued that the traffic stop was illegal and, alternatively, that after the officer had verified the registration information, he should have ended his investigation. In suppressing the evidence, the trial court ruled that the stop was invalid. Assuming without deciding that the initial traffic stop was legal, we find that the challenged evidence was obtained during an illegal detention. Therefore, we uphold the grant of the motion to suppress on the principle that "a trial court's ruling on a motion to suppress will be upheld if it is right for any reason."[4]

"Investigative stops of vehicles are analogous to *Terry* stops."[5] This court has set forth the boundaries of a *Terry* stop as follows:

While a reasonable investigative stop does not offend against the Fourth Amendment, a *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification

---

[3] (Emphasis supplied.)

[4] (Citation and punctuation omitted.) *Fincher v. State*, 276 Ga. 480, 481 (2) (578 SE2d 102) (2003).

[5] (Citation and punctuation omitted.) *State v. Cunningham*, 246 Ga. App. 663, 665 (541 SE2d 453) (2000).

and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop. [Cit.][6]

" 'Further, an officer who questions and detains a suspect for other reasons exceeds the scope of permissible investigation unless he has reasonable suspicion of other criminal activity.' [Cit.]"[7]

In this case, when the officer resolved the vehicle registration question, the investigation for which he had originally stopped Joyner concluded. The pertinent question therefore becomes whether the continued detention of Joyner, during which the officer obtained the incriminating evidence, was authorized by the officer's reasonable suspicion of other criminal activity.[8]

1. Attempting to avoid this question, the state claims that there was no additional detention. It asserts that the officer sought the registration documentation and the driver's license contemporaneously, citing the officer's direct testimony that "Mr. Joyner handed me [the registration] information. I also asked if I could see his driver's license . . . at that time." While that part of the officer's testimony might be construed as placing concurrent the request for the registration documentation and the request for the driver's license, the officer's testimony on cross-examination clarified that the two requests were separated by the officer's conclusion of his investigation into the vehicle registration. We must construe the facts to support the trial court's ruling on the suppression motion. Accordingly, the record reveals that, after concluding his investigation concerning registration of the vehicle, the officer then launched a separate investigation concerning Joyner's driver's license, prolonging Joyner's detention. The state's claim that there was no additional detention is without merit.

2. The state next argues that an investigation into whether a driver may legally operate a vehicle is "part and parcel of the questioning routinely done by officers" in traffic stops. That argument is unavailing because it is not the nature of the questions that offends the Fourth Amendment; it is the impermissible detention of the individual beyond that necessary to investigate the traffic violation precipitating the stop.[9]

---

[6] Id.; see *State v. Swords*, 258 Ga. App. 895, 896 (575 SE2d 751) (2002).

[7] *Cunningham*, supra; see *Swords*, supra.

[8] See *Swords*, supra; *Cunningham*, supra at 665.

[9] See *Gibbons*, supra at 859, 864; *Henderson v. State*, 250 Ga. App. 278, 280 (551 SE2d 400)

3. Thus, we turn to whether the continued detention of Joyner was authorized by the officer's reasonable suspicion of criminal activity.

At the suppression hearing, the officer testified that he had observed no violations of traffic laws or any "suspicious activity." He reported that the vehicle had not been speeding or weaving; that its tag was not obscured; that its tag was not damaged or improperly affixed; that he had received no reports of any criminal activity concerning the vehicle; that the tag on the vehicle appeared current; that the driver had not attempted to flee or elude him; that the driver submitted to his authority; that he had not detected the odor of alcohol or any illegal substance coming from the vehicle; and that he had seen no illegal activity inside the vehicle. Indeed, the prosecutor interrupted, "we'll stipulate that the only action that [the officer] took was based on the computer." The officer was thus asked why he had not allowed Joyner to leave after concluding the vehicle registration investigation, and he answered, "As with all traffic stops, we check licenses to verify that that driver who's operating that vehicle is legally allowed to be operating that vehicle." He was then asked, "What indication was there to you before you took his driver's license . . . that he was not legally operating that vehicle, sir?" He replied, "There was none."

Indisputably, having dispelled his suspicion about the vehicle registration, the officer had no reasonable suspicion of any criminal activity. Because the officer then detained and questioned Joyner about his driver's license without reasonable suspicion of any other criminal activity and without any reason connected to the original purpose of the stop, the detention exceeded the boundaries of a *Terry* stop and was therefore unlawful.[10]

4. Contending that the officer was authorized to investigate the status of Joyner's driver's license to determine whether Joyner was entitled to continue operating the vehicle, the state quotes a sentence from *State v. Williams*,[11] that "it does not unreasonably expand the scope or duration of a *valid traffic stop* for an officer to prolong the

---

(2001) (physical precedent only).

[10] See *Swords*, supra (once the suspicion of unlawful conduct evaporated, the officer was not authorized to continue the detention to investigate other, potential violations of the law); *Faulkner v. State*, 256 Ga. App. 129, 131 (567 SE2d 754) (2002) (because the purpose of the initial stop had been resolved by the time the officer subsequently obtained driver's consent to search vehicle, the consent, which led to discovery of marijuana, was the product of an illegal detention); *State v. Sims*, 248 Ga. App. 277 (546 SE2d 47) (2001) (where the officer continues to detain a driver after the conclusion of a traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer exceeds the scope of permissible investigation of the initial traffic stop).

[11] 264 Ga. App. 199 (590 SE2d 151) (2003).

stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration."[12] But that sentence does not permit admission of evidence obtained during an investigation after a valid traffic stop has concluded.

*Williams* is inapposite because the complained-of investigation there occurred *"during* the course of a valid traffic stop."[13] *Williams* instructed that during a valid traffic stop, "an officer's actions . . . must be reasonably related in scope to the circumstances which justified the stop in the first place, and limited in duration to the time reasonably necessary to accomplish the purpose of the stop."[14] In that case, an officer approached the vehicle he had stopped because of an improperly displayed tag and immediately asked for and obtained the driver's licenses from the two men inside. Using the licenses, the officer conducted computer searches, during which time, the driver consented to a search of the vehicle that produced methamphetamine. Seeking to suppress evidence of the drugs, the passenger argued that the consent was the product of an illegal detention on the grounds that the computer searches had unreasonably expanded the scope and duration of the traffic stop.[15] We rejected that argument, recognizing the risks that an officer faces when approaching occupied vehicles at routine traffic stops and determining that such "risks create a strong interest in officer safety that justifies reasonable safety measures that minimally intrude upon the Fourth Amendment privacy expectations of motorists."[16]

But as *Williams* carefully pointed out, the circumstances there differ from those such as here — where the complained-of investigation was launched after the valid traffic stop had ended. Under the facts of this case, the additional detention was unsupported by reasonable suspicion of any criminal activity.[17] The further investigation was not reasonably related in scope to the circumstances that justified the initial stop. And because the officer's presence was no longer necessary, his safety could not be used to justify additional investigation and detention.[18] The state's reliance on *Williams* is misplaced.

This case is controlled by *State v. Swords*,[19] where this court

---

[12] (Citations omitted; emphasis supplied.) Id. at 202.
[13] (Emphasis supplied.) Id. at 205.
[14] (Citations omitted.) Id. at 202.
[15] See id.
[16] (Citations omitted.) Id. at 203.
[17] Id. at 205; *Swords*, supra; *Faulkner*, supra; *Sims*, supra.
[18] Compare *Williams*, supra at 202-203.
[19] Supra.

expressly rejected the argument that an officer may continue an investigation and detention to determine whether the operator of a vehicle has a valid driver's license. Likewise, here, "[o]nce the suspicion of unlawful conduct evaporated, [the officer] was not authorized to continue the detention in order to investigate other, potential violations of the law."[20]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 19, 2004.

*Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Emilien O. Loiselle, Jr., Assistant Solicitors-General, for appellant.*
*Alan Mullinax, Robert L. Waller III, for appellee.*