### A08A1020. MATTHEWS v. THE STATE.
(670 SE2d 520)

SMITH, Presiding Judge.

Larry Matthews appeals from his conviction for speeding and possession of methamphetamine in violation of OCGA § 16-13-30. Matthews contends that the trial court erred by: (1) denying his motion to suppress; (2) denying his claim of ineffective assistance of counsel; and (3) limiting its in camera review of juvenile records to prior adjudications of delinquency. For the reasons set forth below, we affirm.

1. Matthews asserts the trial court erred by denying his motion to suppress because a police officer "illegally expanded the scope of the initially valid traffic stop." In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment. *State v. Brown*, 278 Ga. App. 457, 460 (629 SE2d 123) (2006). The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed unless no evidence exists to support them. Id. at 459-460; see also *Evans v. State*, 262 Ga. App. 712 (1) (586 SE2d 400) (2003). We "cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision." (Citation and punctuation omitted.) *State v. Lanes*, 287 Ga. App. 311, 312 (651 SE2d 456) (2007).

So viewed, the record shows that a patrol officer stopped Matthews for driving 48 miles per hour on a street with a posted speed limit of 25 miles per hour at 3:32 in the morning. The officer approached Matthews's car and obtained his driver's license and insurance card. While doing so, he noticed a young female in the front passenger seat "bouncing . . . uncontrollably" with bloodshot eyes, "a very sunk-in face," and "very rough skin." Based on her appearance and behavior, the officer asked her for identification. She replied that she did not have any, but provided the officer with a name and date of birth that would have made her 19 years old.

The officer returned to his patrol car to conduct a standard check for outstanding warrants on both Matthews and his passenger. While he was waiting for the information to return, the officer wrote a speeding ticket for Matthews.

When the passenger's information "did not return," the officer became concerned. In his experience, "nine times out of ten" the information does not return "because they have a warrant or they're suspended or they're on probation or parole. Something's going on." His concern was amplified by her strange behavior and appearance, the fact that "[s]he looked younger than the age she gave me," and the "curfew in Georgia."

The officer returned to Matthews at the driver's window "to make sure [he] didn't make a mistake with her name and her date of birth" *and* to give Matthews a ticket. The passenger told him that she possessed a driver's license and identification card and gave the officer a different name with the same date of birth. The officer returned to his patrol car again to confirm the new information, which also did not return on file. Convinced that the passenger was lying to him, the officer approached the passenger side of Matthews's car to talk with her. She appeared "highly intoxicated" to the officer, and he smelled alcohol on her breath. He administered an alco-sensor test of her breath, which was positive for alcohol. The officer concluded that it was unlawful for her to consume alcohol based upon the date of birth she had provided. When confronted by the officer, she admitted that she was highly intoxicated and claimed that Matthews was her uncle who was giving her a ride home. She also provided a different date of birth that made her 17 years old.

At this point, the officer was concerned about the teenager's underage drinking, as well as her safety, and tried to confirm whether Matthews was her uncle. He returned to Matthews's side of the car, and Matthews denied that he was her uncle. While talking with Matthews, the officer noticed a cigarette box in Matthews's crotch area that was also underneath his right leg. It looked odd to the officer because a plastic bag was sticking out of the corner. The officer asked Matthews what was inside the box and Matthews replied that he did not know because "the girl just gave it to him to hide." Matthews agreed to let the officer look inside the box, where the officer discovered crystal methamphetamine. When the officer searched Matthews's car after arresting him, he found a pipe with white residue in a "side cupholder pocket" of the center console.

The officer never gave the completed ticket to Matthews; the unissued ticket written by the officer was later "voided out" based upon Matthews's arrest for possession of methamphetamine. The speeding violation was instead pursued through a warrant.

2. Matthews asserts that the police officer illegally prolonged his detention because the officer should have issued him a ticket for speeding after completing his first check on Matthews and his teenage companion. Matthews argues, therefore, that the fruits of

that search should have been suppressed because he gave consent to search during a prolonged detention. We disagree.

The issue of "the validity of a consent to search given during a traffic stop[ ] is a difficult area of the law and one which has caused much confusion in the real world." (Citation, punctuation and footnote omitted.) *Hayes v. State*, 292 Ga. App. 724, 727 (2) (665 SE2d 422) (2008). In *Salmeron v. State*, 280 Ga. 735 (632 SE2d 645) (2006), the Georgia Supreme Court clarified this area of the law by ruling that "[t]he Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search." Id. at 736 (1). "If a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation." (Citation omitted.) Id. See also *Blitch v. State*, 281 Ga. 125 (636 SE2d 545) (2006).

The police may lawfully ask questions unrelated to the purpose of a valid traffic stop, so long as the questioning does not unreasonably prolong the detention. *Salmeron*, supra, 280 Ga. at 736-738 (1); *Hayes*, supra, 292 Ga. App. at 728 (2).

> A reasonable time includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or written warning. *A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.*

(Citations and footnotes omitted; emphasis supplied.) *Hayes*, supra, 292 Ga. App. at 729 (2) (b); see also *Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005) (officer conducting routine traffic stop may check for outstanding warrants or criminal histories on the vehicle's occupants).

(a) In this case, the police officer asked for consent to search while still investigating the identity of a teenager in a car with a much older man at 3:30 a.m. The search was completed eighteen minutes after the police officer first stopped Matthews for speeding and less than nine minutes after the police officer completed writing the speeding ticket. Based upon the particular facts and circumstances of this case, we cannot say that the police officer's conduct unreasonably prolonged Matthews's detention and rendered his consent to search invalid. See *Hayes*, supra, 292 Ga. App. at 731 (search initiated within ten minutes after officer completed writing warning ticket); *State v. Williams*, 264 Ga. App. 199, 204 (590 SE2d 151) (2003) (traffic stop not unreasonably prolonged even though consent to search obtained twenty-six minutes after stop began).

(b) We further find, in the alternative, that the information developed during the course of the valid traffic stop provided a reasonable, articulable suspicion to prolong Matthews's detention beyond the time reasonably required for completion of the traffic stop standing alone. The officer's inability to obtain a return when he normally did, the difference in age between Matthews and the teenager, the late hour, the teenager's inconsistent answers about her age and identity, her appearance and demeanor, her underage consumption of alcohol, and the conflicting information about Matthews's status as her uncle, all provided the officer with reasonable, articulable suspicion to continue his detention of Matthews. See *Andrews v. State*, 289 Ga. App. 679, 682-683 (658 SE2d 126) (2008) (conflicting stories during traffic stop provided reasonable suspicion to prolong traffic stop); *Carnes v. State*, 293 Ga. App. 549 (667 SE2d 620) (2008) (articulable suspicion developed during course of traffic stop to expand the scope of inquiry).

(c) Matthews asserts that our opinions in *State v. Joyner*, 270 Ga. App. 533 (607 SE2d 184) (2004)[1] and *State v. Swords*, 258 Ga. App. 895 (575 SE2d 751) (2002)[2] require a different result. Each of these cases, however, was impliedly overruled by the Georgia Supreme Court's opinion in *Salmeron*, supra. The rationale for each of these cases was that a Fourth Amendment violation occurs when an officer questions a suspect about matters unrelated to the original reason for a traffic stop. *Joyner*, supra, 270 Ga. App. at 534-535; *Swords*, 258 Ga. App. at 896. This proposition is no longer valid in Georgia and should not be followed. See *Salmeron*, supra, 280 Ga. at 737-738 (overruling similar rationale in *Daniel v. State*, 277 Ga. 840, 841-842 (1) (597 SE2d 116) (2004)).

In *Salmeron*, supra, the Georgia Supreme Court expressly rejected this proposition when it rejected the dissent's claim that "mere extraneous questioning, which does not have the effect of prolonging an already valid seizure for a traffic offense, can itself constitute an independent unreasonable seizure of the traffic offender." 280 Ga. at 738 (1). Following *Salmeron*, we now expressly overrule *Joyner*, supra, and *Swords*, supra.

(d) Matthews also points to our opinions in *Williams*, supra, 264 Ga. App. 199 and *State v. Dixson*, 280 Ga. App. 260 (633 SE2d 636)

---

[1] In *Joyner*, we held that a police officer's continued detention of a driver to verify that he had a valid driver's license violated the Fourth Amendment because the officer had already completed his investigation into the tag registration, the original basis for the traffic stop.

[2] In *Swords*, we held that a police officer violated the Fourth Amendment when he asked for a driver's license and proof of insurance after determining that the reason for the stop, no visible tag, had evaporated.

(2006) in support of his argument that the trial court erred by denying his motion to suppress.

In *Williams*, supra, we held that a police officer may check "for outstanding warrants or criminal histories on the occupants of a vehicle at a valid traffic stop" based upon concerns for officer safety "as long as under the circumstances they do not unreasonably prolong the stop." (Citations omitted.) 264 Ga. App. at 202-203. This holding is consistent with the Georgia Supreme Court's holding in *Salmeron*, supra, as well as the result in this case.

In *Dixson*, supra, we held that a return of "unknown" insurance status standing alone did not provide reasonable, articulable suspicion to initiate a traffic stop. 280 Ga. App. at 262-263. In reaching this result, we noted that the police officer "did not testify that an 'unknown' status likely meant that Dixson's car was uninsured. Nor did he testify about any prior experience or training he had with such a response from [a National Crime Information Center] search or why the database might produce such a response." Id. at 262.

*Dixson* does not control the outcome of this case because it is factually distinguishable. First, the "unknown" return in this case was obtained during an otherwise valid traffic stop; it was not used to justify the initial stop. Second, the "unknown" return in this case related to the passenger's identity, not insurance status. See *Hayes*, supra, 292 Ga. App. at 729 (2) (b). And third, the police officer provided the testimony lacking in *Dixson*: an unknown return happened 90 percent of the time in cases involving an outstanding warrant, suspension, probation or parole.

3. (a) Matthews contends his trial counsel was ineffective based upon his claim that he was never informed during plea negotiations that he faced prison time without the possibility of parole. He concedes, however, that this claim is precluded by the Georgia Supreme Court's opinion in *Williams v. Duffy*, 270 Ga. 580, 581 (1) (513 SE2d 212) (1999). He asserts it only to preserve the issue for any later habeas corpus claim. Based upon *Williams*, we find no merit in this claim of ineffectiveness.

(b) We further find that Matthews cannot demonstrate on appeal that his counsel failed to advise him about the possibility of no parole. In the motion for new trial hearing, Matthews's trial counsel testified that he *did* inform Matthews about the possibility of no parole at a time when Matthews "still had an opportunity to take a non recidivist plea." Trial counsel "talked to Mr. Matthews and he said no, he was innocent and wanted to go forward."

When considering claims of ineffectiveness of counsel, the trial judge determines witness credibility and is not required to accept the defendant's version of events. *Brower v. State*, 230 Ga. App. 125, 126 (2) (495 SE2d 600) (1998); *Randolph v. State*, 225 Ga. App. 324 (484

SE2d 1) (1997). The conflicting evidence before the trial judge provides an alternate reason for denying Matthews's claim of ineffective assistance of counsel. See *Noble v. State*, 220 Ga. App. 155, 157 (1) (469 SE2d 307) (1996).

4. In his remaining enumeration of error, Matthews asserts that the trial judge erred by limiting his in camera review of the passenger's juvenile records to prior adjudications. In his motion for new trial, Matthews claimed that his trial counsel was ineffective because he failed to request an in camera review of the juvenile records to determine if relevant information for cross-examination was included within them. Matthews's appellate counsel successfully moved the trial judge to obtain the relevant juvenile records and conduct an in camera inspection to evaluate the ineffective assistance of counsel claim.

At the beginning of the hearing on Matthews's motion for new trial, the trial judge stated that he had reviewed the available juvenile records only for prior adjudications of delinquency that would have been a crime if committed by an adult. He also, however, invited appellate counsel to present any authority contrary to his view of the information to which Matthews was entitled. Matthews's appellate counsel argued vigorously for a broader review, and the trial judge took the issue under advisement.

Seven days after the hearing, the trial judge issued an order in which he stated that he had "conducted an in camera inspection of the above referenced files and finds nothing which may be furnished to the defense pursuant to Georgia law." In another order issued the same day, the trial judge stated that the in camera inspection revealed "nothing in the juvenile's files that could be used by the defendant to impeach [the juvenile]."

On appeal, Matthews contends the trial court thwarted his appellate counsel's efforts to pursue an ineffective assistance of counsel claim because the trial court allegedly "limited its ex parte review of [the minor]'s records to prior adjudications." He asks that we remand this case to the trial court "with instructions to conduct a proper in camera review of [the minor]'s records." See *Mangum v. State*, 274 Ga. 573, 576-577 (2) (555 SE2d 451) (2001).

We find no merit in this claim, however, because the trial judge's written order fails to support Matthews's claim that the scope of review was limited to prior adjudications only. "The trial judge is presumed to know the law and presumed to faithfully and lawfully perform the duties devolving upon [him] by law." (Citations and punctuation omitted.) *Windom v. State*, 187 Ga. App. 18, 19 (2) (369 SE2d 311) (1988). "[T]his court will not presume the trial court

committed error where that fact does not affirmatively appear." *Smith v. Manley*, 96 Ga. App. 158, 161 (99 SE2d 534) (1957) (on rehearing).

*Judgment affirmed. Barnes, C. J., Johnson, P. J., Blackburn, P. J., Ruffin, P. J., Andrews, Miller, Ellington, Phipps, Mikell, Adams and Bernes, JJ., concur.*

DECIDED NOVEMBER 25, 2008.

*Thomas J. Bowers III*, for appellant.
*Garry T. Moss, District Attorney, James L. Cannella, Jr., Sara A. Thompson, Assistant District Attorneys*, for appellee.