A08A1912. McKNIGHT v. THE STATE.
(673 SE2d 573)

DOYLE, Judge.

A Gordon County jury found Christy Ann McKnight guilty of possession of methamphetamine with intent to distribute.[1] On appeal, McKnight argues that the trial court erred by denying her motion to suppress evidence seized during a traffic stop. For the following reasons, we affirm.

> In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment. The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed unless no evidence exists to support them. We cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision.[2]

So viewed, the evidence shows that on the evening of March 7, 2006, Officer Michael Baldwin of the Fairmount Police Department initiated a traffic stop of McKnight for two minor traffic violations — a broken windshield and a missing tag light. Upon obtaining McKnight's consent and searching her vehicle, the officer recovered McKnight's pocketbook, which contained empty plastic bags, a set of

---

[1] OCGA § 16-13-30 (b). McKnight also was charged with and pleaded guilty to two counts of operating a motor vehicle with defective equipment, in violation of OCGA § 40-8-7.

[2] (Citations and punctuation omitted.) *Matthews v. State*, 294 Ga. App. 836 (1) (670 SE2d 520) (2008).

scales, and three clear bags containing a white crystal substance, eventually identified as methamphetamine.

At the suppression hearing, Officer Baldwin testified that when he approached the vehicle and asked McKnight for her driver's license and insurance card, McKnight "was awful nervous," "[h]er hands were shaking real bad," and "she fumbled around looking for her" license and insurance card. The officer ran McKnight's information and determined that she had no outstanding warrants. Officer Baldwin then returned to the vehicle, requested that McKnight exit the vehicle and talk, and asked her if there was anything illegal in her vehicle; she responded in the negative. The officer explained to McKnight that he wanted to talk to her "to see why she was so nervous."

Officer Baldwin then asked if she would consent to a search of her vehicle. McKnight initially consented, and then, as the officer began the search, she commented that she "didn't know why [he] wanted to search the vehicle." He explained to McKnight that "her hands were shaking[,] and she was acting a little nervous," so he wanted to make sure she had nothing illegal in the vehicle. The officer again asked if McKnight consented to the search, and she stated that the search was okay as the vehicle contained nothing illegal.

On cross-examination, the following colloquy ensued:

DEFENSE COUNSEL: [Y]ou went back and you ran her — she was able to produce a valid driver's license and insurance, correct?

OFFICER BALDWIN: Yes[,] ma'am.

DEFENSE COUNSEL: And so you came back to the vehicle, correct?

OFFICER BALDWIN: Yes.

DEFENSE COUNSEL: At that point had you written any type of citation for the window or the tag light?

OFFICER BALDWIN: No[,] ma'am.

DEFENSE COUNSEL: Okay, why is that?

OFFICER BALDWIN: Because I wanted to talk to Ms. McKnight first.

DEFENSE COUNSEL: In fact, you wanted to get consent to search the vehicle, correct?

OFFICER BALDWIN: Yes, ma'am.

DEFENSE COUNSEL: And that was your sole goal, correct?

OFFICER BALDWIN: No; that was after I [saw] how nervous she was.

DEFENSE COUNSEL: Okay. And that's your only reason for asking for consent to search the vehicle or wanted to get consent to search the vehicle was her nervousness?

OFFICER BALDWIN: Yes, the way she was acting, yes, ma'am.

On appeal, McKnight contends that the motion to suppress should have been granted because Officer Baldwin improperly extended the traffic stop by delaying issuance of the traffic citations in order to gain consent to search her vehicle. She contends that, as shown at the suppression hearing, the officer's interest in searching the vehicle was predicated on her nervousness alone and not because he had a reasonable suspicion justified by specific articulable facts.

"The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning."[3] Therefore, "[o]nce the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention."[4] Nevertheless, "[i]f a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, there is no Fourth Amendment violation."[5]

In *Hayes v. State*,[6] we addressed a factually similar case and reiterated the principle that "[c]onsent given pursuant to a request made after the motorist has been detained for an unreasonable time is not a valid consent and contraband found during a subsequent search is the fruit of the poisonous tree."[7] We explained that

[a] reasonable time includes the time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or a written warning[, as well as the] time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.[8]

In *Hayes*, we determined that a ten-minute conversation between an officer and defendant, which occurred after the officer had completed the traffic citations but before he had returned the

---

[3] (Citation and punctuation omitted.) *Richbow v. State*, 293 Ga. App. 556, 558 (667 SE2d 418) (2008).

[4] (Punctuation omitted.) Id.

[5] (Punctuation omitted.) *Matthews*, 294 Ga. App. at 838 (2) (citing *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006)).

[6] 292 Ga. App. 724, 726 (2) (665 SE2d 422) (2008).

[7] (Emphasis omitted.) *Hayes*, 292 Ga. App. at 729 (2) (a).

[8] Id. at 729 (2) (b).

defendant's paperwork or given him the citations, was reasonable.[9] The conversation ended with the officer returning the paperwork, and 30 seconds later, he asked the defendant for consent to search the vehicle.[10] We determined that the consent was valid and that "[t]he trial court did not err in concluding that this virtually contemporaneous request did not unreasonably prolong the detention."[11] Based on the testimony given at the suppression hearing, it does not appear that Officer Baldwin's exchange with McKnight, which concluded in a consent search of the vehicle, exceeded ten minutes.[12] Therefore, any delay in McKnight's detention that occurred due to Officer Baldwin's questioning was reasonable and did not render invalid her consent to search.[13]

McKnight argues that the officer's intent (as evinced by his testimony at the suppression hearing) to solicit her consent immediately transformed the stop into a second detention because his suspicion was not supported by specific articulable facts. As we explained in *Hayes*, however, the current state of the law allows police to "lawfully ask questions during the course of the stop about [criminal activity unrelated to the stop], so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop."[14] This is true even if the officer has "*no basis* for suspecting that a person detained at a traffic stop is engaged in criminal activity."[15] Thus, while McKnight is correct that Officer Baldwin's suspicion based solely on her nervousness would not have been sufficient to continue to detain her after the stop concluded in order to search the vehicle,[16] the fact that he elicited her consent before completion of and without unreasonably prolonging the initial stop is dispositive.[17] Finally, McKnight's reliance on *Padron v. State*[18] is misplaced, as that case was decided prior

---

[9] See id. at 731 (2) (e).

[10] See id.

[11] Id.

[12] We note that the stop was not recorded, and the suppression hearing does not contain testimony regarding an estimated length of time of the events of the evening.

[13] See *Hayes*, 292 Ga. App. at 731; *Matthews*, 294 Ga. App. at 838 (2) (a) (finding valid a consent search, which was completed eighteen minutes after the police first stopped defendant and nine minutes after writing citation).

[14] (Punctuation omitted.) *Hayes*, 292 Ga. App. at 730 (2) (d).

[15] (Punctuation omitted; emphasis supplied.) Id.

[16] See *Bell v. State*, 295 Ga. App. 607 (672 SE2d 675) (2009); *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) (nervousness alone is not sufficient to establish reasonable suspicion to detain and investigate for illicit drug activity).

[17] *Salmeron*, 280 Ga. at 736 (1); *Matthews*, 294 Ga. App. at 838 (2) (a); *Hayes*, 292 Ga. App. at 730-731 (2) (e).

[18] 254 Ga. App. 265 (562 SE2d 244) (2002).

to the Supreme Court of Georgia's decision in *Salmeron*,[19] which rejected the contention that an officer cannot question an individual on matters outside the scope of the reason for the initial traffic stop.[20]

Accordingly, we discern no reversible error by the trial court. *Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 12, 2009.

*Samir J. Patel*, for appellant.
*T. Joseph Campbell, District Attorney, Suzanne Z. Brookshire, Assistant District Attorney*, for appellee.

