S04A1473. BOLDEN v. THE STATE.
S04A1526. LINDSEY v. THE STATE.
(604 SE2d 133)

BENHAM, Justice.

Appellants Derrick Bolden and Lisa Lindsey were convicted of felony murder with aggravated assault being the underlying felony, in connection with the homicide of Dexter Freeman. Both appellants were also convicted of the aggravated assaults of Jamie Hill, Brien Byner, and Roderick Levi, all of whom were in the house into which the shots were fired that resulted in Freeman's death. In addition,

appellant Bolden was convicted of possession of a firearm during the commission of a felony. On appeal, both appellants take issue with the trial court's denial of their motions to sever their trials, and appellant Lindsey contends the trial court erred when it denied her motion to suppress a statement she made to police.[1]

1. Dexter Freeman was found dead the morning of August 27, 2001, in the back hallway of a duplex used by several individuals as a site for drug sales. Freeman had been shot once in the chest and the bullet had lacerated his left iliac artery. Several people at the duplex testified that two men, accompanied by two women, had shot guns at the house from across the street at 4:00 a.m. There was evidence that 12 shots were fired into the house, and that victims Hill, Byner and Levi were in the house when the shooting took place and took cover to avoid being struck by any of the bullets. A woman serving as a lookout for the drug dealers identified appellant Bolden as one of the two men shooting. The other shooter, co-indictee Cari Red Tomlin, pled guilty to voluntary manslaughter and testified at the Bolden/Lindsey trial. He identified appellant Bolden as the other shooter and appellant Lindsey as one of the women with the shooters.

Roderick Levi, one of the aggravated assault victims, testified he had been approached at the house at 1:00 a.m. the morning of the shooting by a woman seeking to buy a $50 piece of crack cocaine. He told her he sold only $10 bags of crack and referred to her as "bitch." Co-indictee Tomlin testified he and Bolden had armed themselves with guns and accompanied Lindsey and another woman to the drug house after Lindsey had returned from an attempt to purchase crack cocaine at the house and told the men she had been called a bitch by the person who did not sell her the cocaine she wanted. Tomlin understood they were going to the drug house "to shoot," and described himself as a life-long friend of appellant Bolden, who was the son of appellant Lindsey. A woman who was present when Lindsey reported the name-calling testified Lindsey "had an [angry] attitude" when she told the others about the name-calling. Lindsey then said, "Y'all, let's go," and the two men grabbed their pistols and returned

---

[1] The victims were shot on August 27, 2001. Appellants were charged in a true bill of indictment returned November 16, 2001 that charged Bolden with malice murder and possession of a firearm during the commission of a felony, and both appellants with felony murder/aggravated assault of Freeman; and aggravated assault of Hill, Byner, and Levi. Appellants' trial commenced November 19, 2002, and concluded with the return of the jury's verdict of guilty on all counts except the malice murder charge, on November 25. Lindsey filed a motion for new trial on December 12, 2002, and amended it on July 8, 2003. Bolden filed his motion for new trial on December 20, 2002, and also amended it on July 8, 2003. Both motions were denied in an order filed on February 24, 2004. Bolden filed a premature notice of appeal on February 18, 2004, and his appeal was docketed in this Court on May 6. Lindsey filed a timely notice of appeal on March 1, 2004, and her appeal was docketed in this Court on May 14. Both appeals were submitted for decision on the briefs.

with her to the site of the slight. After they returned from the shooting, Lindsey bragged about the action taken.

The evidence was sufficient to authorize a rational trier of fact to find appellant Bolden guilty of felony murder and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As for appellant Lindsey,

> [e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime only if [s]he: . . . (3) [i]ntentionally aids or abets in the commission of the crime; or (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.

OCGA § 16-2-20 (a), (b). "Evidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act." *Jordan v. State*, 272 Ga. 395, 396 (1) (530 SE2d 192) (2000). There was sufficient evidence to authorize a rational trier of fact to find appellant Lindsey guilty of felony murder and aggravated assault beyond a reasonable doubt.

2. Both appellants contend the trial court erred when it denied their motions to sever their trials. Since the State was not seeking the death penalty, the decision whether to try separately or jointly defendants who were jointly indicted was a matter for the discretion of the trial court, and there is no error in the denial of a motion to sever unless that discretion has been abused. OCGA § 17-8-4;[2] *Heard v. State*, 274 Ga. 196 (5) (552 SE2d 818) (2001); *Reaves v. State*, 242 Ga. 542 (3) (250 SE2d 376) (1978). In order to obtain severance, a defendant must clearly show that joinder will result in prejudice and a denial of due process. *Burgess v. State*, 276 Ga. 185 (4) (576 SE2d 863) (2003). Factors to be considered by the trial court are: whether a joint trial will create confusion of evidence and law; whether there is a danger that evidence implicating one defendant will be considered against a co-defendant despite limiting instructions; and whether the defendants are asserting antagonistic defenses. Id.

Both appellants contend severance was required because evidence admissible against the co-defendant adversely affected the

---

[2] OCGA § 17-8-4 states: "When two or more defendants are jointly indicted for a capital offense, any defendant so electing shall be separately tried unless the state shall waive the death penalty. When indicted for a capital felony when the death penalty is waived, . . . such defendants may be tried jointly or separately in the discretion of the trial court."

other. Appellant Bolden contends the evidence concerning the name-calling directed at appellant Lindsey during her first trip to the drug house adversely reflected on him, and appellant Lindsey maintains the evidence that Bolden and Tomlin armed themselves, went to the drug house, and fired shots into the house was improperly considered against her since, she contends, there was no evidence that Lindsey instructed or encouraged her co-indictees to fire shots.

An evidentiary danger of a joint trial is the jury's consideration against both defendants of evidence admissible against only one defendant, despite limiting instructions. Id. In the case at bar, the evidence with which each appellant takes issue was admissible against both of them inasmuch as each played a separate role in the aggravated assaults and murder, and the evidentiary facts and the law applicable to each were substantially the same. *Green v. State*, 274 Ga. 686 (2) (558 SE2d 707) (2002). In such a situation, we cannot say the trial court abused its discretion in refusing to grant the motions to sever.

3. Appellant Lindsey also contends the trial court erred when it denied her motion to suppress a statement she made to the investigating detective at the police station after she had been transported to the station by a plainclothes officer who had handcuffed her while she was in the back seat of his unmarked car. Prior to giving her statement, Lindsey was not informed of her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and she contends the statement should be suppressed because she was in custody at the time she gave the statement.

At the suppression hearing, the investigating detective testified he executed a search warrant at Lindsey's home nine days after the shootings and learned she was the only person at the home the day of and the day after the shootings with whom he had not spoken. He asked officers working in the neighborhood to ask Lindsey to come to the police station if they saw her. Because Lindsey did not have a means of transportation, the investigating detective asked the plainclothes officers who found Lindsey to drive her to the police station if she was amenable. While at the station Lindsey was not restrained and, after the interview, the investigating officer drove her home. While the transporting plainclothes officer did not testify despite being subpoenaed, the assistant district attorney stated in her place that the officer had told her he had found Lindsey who had agreed to talk with the investigator and the officer had told Lindsey she was not under arrest, but she would be transported to the station in handcuffs as a safety measure because he was driving an unmarked car that had no screen between the back seat passenger and the driver. She was not handcuffed when she was brought into the station and she sat in a

sitting room rather than an interrogation room. Before any questioning began, she was again told she was not under arrest and she could leave after giving her statement. Two weeks later, the investigating detective had garnered enough information to charge Lindsey with murder and obtained an arrest warrant for her. She turned herself in to police a month later.

> *Miranda* protections adhere when an individual is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required. [Cit.] To determine if an individual is in custody for purposes of *Miranda*, courts must inquire into whether that person's freedom of movement was restrained to a degree associated with a formal arrest. [Cits.] This inquiry involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave. [Cits.]

*Henley v. State*, 277 Ga. 818, 819 (2) (596 SE2d 578) (2004). We agree with the trial court that, under the circumstances, i.e., appellant Lindsey was repeatedly told she was not under arrest and that handcuffed transportation was a required safety procedure; the handcuffs were promptly removed upon arrival at the destination, and she was told she was free to leave at any time; she was not confined while awaiting her interview and was driven home afterwards, a reasonable person would not have considered her freedom of movement restrained to the degree associated with a formal arrest. *Dye v. State*, 717 NE2d 5, 15-16 (Ind. 1999) (under circumstances, including having been transported to police station in handcuffs pursuant to safety procedure, reasonable person would not have considered himself in custody so as to trigger the giving of *Miranda* warnings). Compare *DiMarco v. Kraft*, 1999 WL 787632 (N.D. Ill. 1999) (person forcibly escorted from site to police station in handcuffs without consent was "in custody").

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 4, 2004.

*Bobby D. Wilson*, for appellant (case no. S04A1473).
*Luana K. Walsh*, for appellant (case no. S04A1526).

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.