## S06A1451. SMITH v. THE STATE.
(640 SE2d 1)

CARLEY, Justice.

Carlos Smith was charged with malice murder and related offenses in connection with the shooting death of Geraldo Olivares. At trial, eyewitness testimony identified Smith as the shooter. In addition, the prosecution introduced his confession. The jury found him guilty of malice murder and possession of a firearm while attempting to rob Mr. Olivares. Smith waived his right to a jury trial on a separate count of possessing a firearm by a first offender probationer, of which he was found guilty after a bench trial. The trial court entered judgments of conviction, and then imposed a life sentence for murder and five-year sentences for the firearm offenses. After the denial of a motion for new trial, Smith appeals.[*]

1. Smith does not enumerate the general grounds. However, an independent review of the transcript reveals that the evidence, when construed most strongly in support of the jury's verdicts and the trial court's finding of guilt, is sufficient to find him guilty of malice murder and the two weapons charges beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Smith filed a motion to suppress, asserting that he was initially detained illegally and that this illegal detention tainted all that followed, including his confession and the seizure of his clothing. However, the trial court denied the motion, and allowed the prosecution to introduce the evidence. Smith enumerates that evidentiary ruling as error.

"On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment and the trial court's findings on

---

[*] The crimes were committed on February 23, 2003. The grand jury indicted Smith on May 9, 2003. The jury returned the guilty verdicts on April 25, 2005, and the trial court found Smith guilty of violating OCGA § 16-11-131 on April 26, 2005. The trial court entered the judgments of conviction and imposed the sentences on May 8, 2005. On May 12, 2005, Smith filed a motion for new trial, which the trial court denied on March 10, 2006. Smith filed a notice of appeal on March 14, 2006 and the case was docketed in this Court on May 2, 2006. The appeal was submitted for decision on June 26, 2006.

disputed facts and credibility must be accepted unless clearly erroneous. (Cit.)" [Cit.]

*Aranda v. State,* 226 Ga. App. 157 (486 SE2d 379) (1997). Applying that standard here, the trial court was authorized to find that, based on an anonymous tip, Officer Harris located Smith, who was standing outside with a group of other men, and asked him for identification. After confirming Smith's identity, the policeman returned the identification and asked if Smith would be willing to wait until Detective Walker, who was investigating the murder of Mr. Olivares, could arrive. Officer Harris testified that he told Smith that he was not under arrest. The policeman also testified that Smith spoke with him voluntarily and agreed to sit and wait in the patrol car and then go with Detective Walker for questioning. In the course of his investigation, the detective had viewed a videotape of the homicide made by a security camera at a nearby apartment complex. He also had received information that the first name of the gunman was Carlos and that Carlos lived on Lexington Street with his grandmother. When Detective Walker arrived on the scene shortly after being summoned by Officer Harris, he determined that Smith's first name was Carlos, that Smith was wearing clothing which was similar to that worn by the shooter on the videotape, and that Carlos lived on Lexington Street with his grandmother. The detective asked Smith if he would come to the homicide office to discuss the murder, and Smith agreed to go. After he agreed to Detective Walker's request, Smith apparently was first transported to a precinct by Officer Harris and then to the homicide office by Detective Walker. There, Smith was given the warnings mandated by *Miranda v. Arizona,* 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He waived his constitutional rights in writing, and then made the statement admitting his guilt.

"(E)ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, (cits.); [and] ask to examine the individual's identification, (cits.) . . . — as long as the police do not convey a message that compliance with their requests is required." [Cit.] . . . . "(I)t (is) clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' (cit.), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." [Cit.]

*State v. Westmoreland*, 204 Ga. App. 312-313 (418 SE2d 822) (1992). " 'Since a consensual encounter is not a seizure, questioning during such an encounter is lawful, regardless of scope, as long as the person remains a willing participant. (Cits.)' [Cit.]" *Daniel v. State*, 277 Ga. 840, 846 (3) (597 SE2d 116) (2004). Here, the evidence authorized a finding that the initial encounter between Smith and Officer Harris never escalated into a seizure, since it remained completely consensual.

When Detective Walker eventually arrived and determined that Smith matched the murder suspect as to first name, attire, and residence, he had at least an articulable suspicion authorizing him to detain Smith so as to conduct a further investigation. See *United States v. Hensley*, 469 U. S. 221 (105 SC 675, 83 LE2d 604) (1985); *McGhee v. State*, 253 Ga. 278, 279 (1) (319 SE2d 836) (1984); *Smith v. State*, 165 Ga. App. 333, 334 (1) (299 SE2d 891) (1983); *Starr v. State*, 159 Ga. App. 386, 387 (283 SE2d 630) (1981); *Duffy v. State*, 156 Ga. App. 847, 848 (2) (275 SE2d 658) (1980). "An investigative detention usually must 'last no longer than is necessary to effectuate the purpose of the stop,' and the 'scope of the detention must be carefully tailored to its underlying justification.' [Cit.]" *Daniel v. State*, supra at 841 (1). Here, there was no need to detain Smith involuntarily, because he consented to go with the detective for further questioning. The evidence is unclear whether, after Smith freely consented to further questioning, he was handcuffed, as a safety precaution, by Officer Harris for transport to the precinct. However, even if he was, that would not necessarily demand a finding that he was under formal arrest or vitiate the consent to further questioning that he had given previously to Detective Walker. This Court has recognized that officers may handcuff a suspect during an investigatory stop when such action is either reasonable under the circumstances to protect themselves or the public, or to maintain the status quo. In *Bolden v. State*, 278 Ga. 459, 463 (3) (604 SE2d 133) (2004), we unanimously held that

> [w]e agree with the trial court that, under the circumstances, i.e., [the] appellant . . . was repeatedly told she was not under arrest and that handcuffed transportation was a required safety procedure; the handcuffs were promptly removed upon arrival at the destination, and she was told she was free to leave at any time; she was not confined while awaiting her interview and was driven home afterwards, a reasonable person would not have considered her freedom of movement restrained to the degree associated with a formal arrest. *Dye v. State*, 717 NE2d 5, 15-16 (Ind. 1999) (under circumstances, including having been transported to police

station in handcuffs pursuant to safety procedure, reasonable person would not have considered himself in custody so as to trigger the giving of *Miranda* warnings). Compare *DiMarco v. Kraft*, 1999 WL 787632 (N.D. Ill. 1999) (person forcibly escorted from site to police station in handcuffs without consent was "in custody").

Our recognition in *Bolden* that handcuffing is not the dispositive factor in resolving a motion to suppress is consistent with the resolution reached in other jurisdictions which have considered the issue. *United States v. Williams*, 2006 WL 1697534 (11th Cir. 2006). See also *United States v. Gil*, 204 F3d 1347, 1351 (II) (B) (11th Cir. 2000) (holding that "to maintain the safety of the officers and the ongoing investigation . . . , handcuffing [the suspect] and detaining her in the back of the police car was reasonable"); *United States v. Hastamorir*, 881 F2d 1551, 1556-1557 (11th Cir. 1989). Compare *United States v. Virden*, 417 FSupp.2d 1360, 1366 (M.D. Ga. 2006) (in addition to being handcuffed, the suspect was transported, "without his consent, to a police investigative site . . . ."). The record in this case is clear that, notwithstanding any restraint used by Officer Harris as a safety precaution in initially transporting Smith from the scene to the precinct, when Smith was subsequently transported from the precinct to the homicide office by the detective, he was not handcuffed or restrained in any manner. While at the homicide office, he was placed in an unlocked room, and was not formally arrested until he waived his constitutional rights and confessed. On this evidence, the only real distinction between the circumstances in *Bolden* and this case is that Smith was not driven home after being questioned because he made an inculpatory statement during his interview. Under the circumstances, the trial court was authorized to find that the confession was voluntary and was not the product of an illegal detention. *Bolden v. State*, supra; *Dupree v. State*, 247 Ga. 470, 472 (2) (277 SE2d 18) (1981). Compare *Hayes v. Florida*, 470 U. S. 811, 812 (105 SC 1643, 84 LE2d 705) (1985) (police "transport[ed] a suspect to the station . . . for fingerprinting, without his consent . . . .").

The post-arrest seizure of Smith's clothes was accomplished pursuant to a search warrant issued by a judge. Smith does not challenge the warrant based on a lack of probable cause, but only contends that the clothing was inadmissible because the warrant is also the product of his unlawful detention. As previously discussed, however, Smith was never subjected to any unlawful detention. Accordingly, the trial court properly denied the motion to suppress the clothes.

3. The trial court gave a charge on the definition of circumstantial evidence, but failed to give a requested instruction on the

principle that, to authorize a conviction on such evidence, the proven facts must exclude every other reasonable theory except the guilt of the accused. Citing *Mims v. State*, 264 Ga. 271 (443 SE2d 845) (1994), Smith urges that this failure on the part of the trial court was reversible error.

In *Mims*, supra at 273, "the evidence was close enough that failure to give this charge was not harmless." See also *Waits v. State*, 232 Ga. App. 357, 360 (2) (501 SE2d 870) (1998) ("evidence of [defendant's] guilt was not overwhelming"). That is not the case here. The evidence of Smith's guilt, including his confession and the eyewitness testimony, is overwhelming. Therefore, the error in failing to give the requested instruction is harmless. *Livery v. State*, 233 Ga. App. 882, 885 (3) (506 SE2d 165) (1998).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 30, 2006.

*Carl P. Greenberg*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.