A09A1183. BOYD v. THE STATE.
(685 SE2d 319)

ANDREWS, Presiding Judge.

Marcus Allen Boyd was found guilty at a bench trial of possession of methamphetamine with intent to distribute. Boyd, who was a passenger in a vehicle stopped by police for a traffic violation, claims police violated his Fourth Amendment right to be free from unreasonable search or seizure when they patted him down for weapons during the stop, summoned a drug-sniffing dog which alerted on his shoes, then searched his shoes and found hidden methamphetamine. Because there was no Fourth Amendment violation, we find the trial court correctly denied Boyd's motion to suppress the methamphetamine, and we affirm the judgment of conviction.

1. The evidence at the suppression hearing construed in favor of the trial court's determination showed the following: Two Forsyth County sheriff's officers observed a vehicle weaving in and out of the lane of traffic in which the vehicle was traveling, and conducted a traffic stop to determine if the driver was impaired. Boyd was the only passenger in the vehicle. The officers ordered both the driver and Boyd to exit the vehicle. The driver had bloodshot, watery eyes and was slumped forward leaning on the vehicle for support. The officers detected no smell of alcohol, and the driver denied drinking alcoholic beverages or taking any prescription medication or other drugs. Before running a check on the driver's license, insurance, and possible outstanding warrants, Officer Daves asked the driver for consent to search the vehicle to determine if there was evidence of

alcohol or other drugs that could impair driving. The driver consented to the search, and the officer searched the vehicle but found nothing. The officer then proceeded to run a check on the driver's information.

During this period of time, Officer Weeks was with Boyd. Officer Weeks knew Boyd and knew that Boyd had previously been arrested for possession of eight grams of methamphetamine. The officer asked Boyd if he had any weapons on him, and Boyd denied having any weapons. Pursuant to Boyd's consent, Officer Weeks patted him down for weapons, but the officer did not detect anything that felt like a weapon. While Officer Weeks conversed with Boyd during the ongoing traffic stop, Boyd admitted that he was still involved with methamphetamine and had used it within the last week. This information along with the officer's knowledge that persons involved with methamphetamine frequently carry weapons prompted the officer to ask Boyd to consent to empty his pockets. Boyd consented and emptied his pockets and revealed that he was carrying a knife in one of the pockets. Because Boyd had a knife on his person and had lied to the officer about not having a weapon, Officer Weeks decided for his own safety to conduct a second pat-down of Boyd. When the officer began to pat down below Boyd's knee, Boyd suddenly jerked his leg away from the officer, threw his hands in the air, and screamed over and over at the officer in an agitated manner, "Why [do] you need to look in my shoe?" Officer Daves, who was still running checks on the driver's information in his patrol car, heard the commotion and came over to lend assistance. Evidence showed that, about that time or shortly thereafter, Officer Daves obtained information that the driver was currently on probation for a methamphetamine offense and had used methamphetamine earlier that day. Based on Boyd's reaction to the attempted pat-down of his shoe area, information that the driver and Boyd were currently involved with methamphetamine, and the driver's impaired demeanor, the officers suspected that Boyd was trying to protect his shoes because he was using them to hide either a weapon or drugs or both. Boyd initially resisted letting Officer Weeks pat down anywhere near his socks or shoes, and told the officer that, if he wanted to look in his shoes, "get a search warrant." Although Boyd eventually let Officer Weeks pat down the outside of his shoes and feel around his Achilles tendon area while the shoes remained on his feet, Officer Weeks testified that he could not feel through the shoe material to determine if anything felt like a weapon inside the shoe. Believing that they were limited to a pat-down for any weapon concealed in Boyd's shoes, and that they could not remove the shoes from his feet for that purpose, the officers decided to call for a trained drug-sniffing dog to investigate their suspicion that Boyd was concealing illegal drugs in

his shoes.

The record shows that the drug-sniffing dog arrived about 15 minutes later, sniffed Boyd's shoes, and alerted to the presence of illegal drugs. Boyd resisted, but the officers forcibly removed his shoes and discovered inside one of the shoes a nylon case containing two bags of suspected methamphetamine crystals weighing about fourteen grams.

The facts at the hearing support the following conclusions. Having observed the vehicle weave out of its lane, the officers had a valid basis to stop the vehicle for a traffic violation and to investigate whether the driver was impaired. *Arizona v. Johnson*, ___ U. S. ___ (129 SC 781, 784, 172 LE2d 694) (2009); *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). At that point, both the driver and the passenger, Boyd, were seized under the Fourth Amendment for the duration of the traffic stop. *Brendlin v. California*, 551 U. S. 249, 254-256, 262 (127 SC 2400, 168 LE2d 132) (2007). As a precautionary measure, the officers were entitled to order the driver and Boyd to get out of the vehicle. Id. at 258. During the stop, the officers were also entitled for their own protection to conduct a pat-down of the outer clothing of the driver or any occupant of the vehicle to discover weapons upon reasonable suspicion that the person was armed. *Arizona*, 129 SC at 784-788; *Terry*, 392 U. S. at 27-30; *State v. Kipple*, 294 Ga. App. 420, 421-422 (669 SE2d 185) (2008). Officer Weeks's knowledge of Boyd's prior involvement with a substantial quantity of methamphetamine would alone have justified the officer's pat-down in light of the well-known association of weapons and drugs. *Holmes v. State*, 267 Ga. App. 651, 652-653 (601 SE2d 134) (2004). Nevertheless, Boyd does not contest the fact that, after denying he had a weapon, he voluntarily consented to the initial pat-down, and that, following his disclosure to the officer that he continued to use methamphetamine, he voluntarily consented to show the officer the content of his pockets, thus revealing that he was carrying a knife. See *Johnson v. State*, 297 Ga. App. 847 (678 SE2d 539) (2009) (passenger's voluntary consent to pat-down and to show contents of pocket). Considering the officer's knowledge of Boyd's involvement with and recent use of methamphetamine, along with Boyd's false denial that he had a weapon on his person, the officer had a reasonable basis to suspect that Boyd may be armed with another weapon on his person. Under these circumstances, "[i]t was reasonably prudent after taking control of the knife for the officer to conduct a pat-down for his own safety to determine if [Boyd] was still armed with another weapon." *Kipple*, 294 Ga. App. at 422.

While Officer Weeks was conducting this pat-down and had reached the area of Boyd's knees, Boyd began to resist, pull away from the officer, and scream his objection to any attempt by the

officer to look in his shoes. This highly suspicious behavior, along with other information that Boyd and the driver were involved with and had recently used methamphetamine, provided the officers with a reasonable basis to suspect that Boyd was hiding illegal drugs in his shoes.[1] *Terry*, 392 U. S. at 9; *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994). At that point, the officers had a basis independent of the traffic stop to briefly detain Boyd pursuant to *Terry*, supra, to investigate their reasonable suspicion of other criminal activity. *Perez v. State*, 280 Ga. App. 241, 242-243 (633 SE2d 572) (2006).[2] To investigate this suspicion, the officers immediately summoned a trained drug-sniffing dog, and detained Boyd for about 15 minutes before the dog arrived, sniffed Boyd's shoes, and alerted to the presence of illegal drugs. In determining whether the length of this detention was within the brief investigative period authorized by *Terry*, we consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U. S. 675, 686 (105 SC 1568, 84 LE2d 605) (1985). The record shows that the officers acted diligently to investigate their suspicion and that the 15-minute detention was not unreasonable under *Terry*, supra. When the trained drug-sniffing dog detected the odor of illegal drugs emanating from Boyd's shoes, this provided probable cause for the search conducted by the officers that revealed the methamphetamine hidden in the shoe. *State of Ga. v. Montford*, 217 Ga. App. 339, 341 (457 SE2d 229) (1995). The trial court correctly denied Boyd's motion to suppress evidence of the methamphetamine.

2. At the bench trial, the State presented evidence that the officers found about 14 grams of methamphetamine crystals hidden in Boyd's shoe; that this was a large amount of methamphetamine which exceeded amounts possessed by users for personal consump-

---

[1] The officers did not violate the Fourth Amendment when they obtained some of this information from Boyd and the driver by questioning them during the course of the traffic stop about matters unrelated to the purpose of the stop. These inquiries "do not convert the encounter into something other than a lawful seizure, so long as [they] do not measurably extend the duration of the stop." *Arizona*, 129 SC at 788; *Salmeron v. State*, 280 Ga. 735, 736 (632 SE2d 645) (2006).

[2] Despite Boyd's animated and suspicious attempt to keep the officer away from his shoes during the pat-down for weapons, the officer proceeded on the belief that he could not require Boyd to remove his shoes to investigate his suspicion that Boyd's conduct indicated he was hiding a weapon in a shoe. Where circumstances require, however, "*Terry* does not limit a weapon search to a so-called pat-down search." *Hayes v. State*, 202 Ga. App. 204, 206 (414 SE2d 321) (1991). Since the officer did not proceed beyond a pat-down and a limited feel while the shoes remained on Boyd's feet, we do not address whether under these circumstances the officer could have reasonably required Boyd to remove his shoes for a protective weapon search. See *People v. Sorenson*, 752 NE2d 1078 (Ill. 2001).

tion; and that it showed Boyd's intention to sell or distribute the methamphetamine. The State also presented evidence that, after being given and waiving rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), Boyd gave a statement to a police officer admitting that he possessed the methamphetamine and intended to sell it. The evidence was sufficient for the trial court to find beyond a reasonable doubt that Boyd was guilty of possession of methamphetamine with intent to distribute. OCGA § 16-13-30 (b); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 23, 2009 —
RECONSIDERATION DENIED OCTOBER 14, 2009

*Banks & Stubbs, Rafe Banks III*, for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.