A11A0729. NUNNALLY v. THE STATE.
(713 SE2d 408)

PHIPPS, Presiding Judge.

Challenging his judgment of conviction, Ralph Nunnally contends that the evidence was insufficient to support the verdicts upon charges of: (i) turn signal violation,[1] and (ii) possession of less than one ounce of marijuana.[2] He also maintains that the drug evidence should have been suppressed as fruit of an illegal seizure. For reasons that follow, we affirm the conviction for the traffic offense and reverse the conviction for the drug offense.

The state's witnesses testified to the following. On the afternoon of October 3, 2008, a patrol officer saw Nunnally twice fail to use his turn signal when traffic conditions required Nunnally to do so. During the ensuing traffic stop, a backup officer arrived with a dog trained in narcotics detection. While being walked around Nunnally's vehicle, the dog signaled at the driver's door that narcotics were inside. Nunnally, who had been traveling alone, was arrested. Subsequent searches of Nunnally's person and the driver's floorboard of his vehicle yielded marijuana.

1. We consider first Nunnally's sufficiency challenge to his traffic

---

[1] OCGA § 40-6-123.
[2] OCGA § 16-13-30 (a).

conviction. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

Nunnally argues that there was evidence showing that the officer who testified that he had turned without signaling in violation of OCGA § 40-6-123 was not credible. In addition, he points to his own testimony that he did use his turn signal. However, the jury, not this court, resolves conflicts in the testimony and weighs the evidence.[4] And decisions regarding credibility are uniquely the province of the jury,[5] which was not required to believe Nunnally's testimony, nor to disbelieve that of the officer.[6] The evidence, viewed in the light most favorable to the prosecution, authorized the jury to find that Nunnally turned without signaling in violation of OCGA § 40-6-123.[7]

2. We turn to Nunnally's challenge to the drug conviction. Nunnally maintains that the marijuana evidence should have been suppressed. He asserts that the patrol officer illegally detained him in order to conduct a drug investigation. When the backup officer arrived with the drug dog, Nunnally argues, the traffic stop was impermissibly expanded, thus rendering the marijuana — found only thereafter — the fruit of an illegal seizure.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]."[8]

> Because a routine traffic stop, even one based on probable cause of a traffic code violation, is a type of seizure more akin to an investigative stop under *Terry v. Ohio*,[9] than a formal arrest, we apply the principles of *Terry* when analyzing the Fourth Amendment requirement that the scope and duration of the investigation conducted during a valid stop must be reasonable under the circumstances.[10]

"An investigative detention usually must last no longer than is

---

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[4] *Wells v. State*, 297 Ga. App. 153, 154 (1) (676 SE2d 821) (2009).

[5] See *Cleveland v. State*, 285 Ga. 142, 147 (674 SE2d 289) (2009).

[6] *Wells*, supra at 157 (1) (b).

[7] *Jackson v. Virginia*, supra; *Wells*, supra.

[8] *Whren v. United States*, 517 U. S. 806, 809-810 (II) (116 SC 1769, 135 LE2d 89) (1996).

[9] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[10] *State v. Williams*, 264 Ga. App. 199, 201 (590 SE2d 151) (2003) (citation omitted).

necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification."[11] " '[A] seizure that is justified solely by the interest in issuing a warning [or traffic] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.' "[12]

> In determining whether the length of [Nunnally's] detention was within the brief investigative period authorized by *Terry*, we consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[13]

The facts relevant to that issue are not disputed, and the trial court's application of the law to the undisputed facts is subject to de novo review.[14]

After the patrol officer stopped Nunnally for failing to use his turn signal, he requested and received from Nunnally his driver's license and insurance documentation. The officer testified that, during their exchange, Nunnally displayed fidgety hand movements and did not look him in the eye. Because the officer therefore perceived that Nunnally was "very nervous," as he walked back to his patrol car, the officer called for safety purposes a backup unit. On that day, the patrol officer's backup was a K-9 unit.

The officer recounted that, after he reached his patrol car, "[I] [h]ad dispatch run the driver's license, things such as that. I did not start on the citation at that time. I mainly focused my attention on Mr. Nunnally due to his moving around within the vehicle. Once [the backup unit] arrived, I asked Mr. Nunnally from the vehicle."[15] The officer testified that Nunnally complied with his request to step out of his car, and he conducted a pat-down of Nunnally's person and

---

[11] *Smith v. State*, 281 Ga. 185, 187 (2) (640 SE2d 1) (2006) (citation and punctuation omitted).

[12] *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006), quoting *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SC 834, 160 LE2d 842) (2005).

[13] *Boyd v. State*, 300 Ga. App. 455, 458 (1) (685 SE2d 319) (2009), quoting *United States v. Sharpe*, 470 U. S. 675, 686 (II) (B) (105 SC 1568, 84 LE2d 605) (1985).

[14] *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994); see *Williams*, supra at 199. See also *White v. State*, 263 Ga. 94, 98 (5) (428 SE2d 789) (1993) (suppression hearing transcript and trial transcript may be considered on review of suppression ruling); *Arnold v. State*, 304 Ga. App. 90, n. 2 (695 SE2d 402) (2010).

[15] See generally *Becoats v. State*, 301 Ga. App. 768, 770 (688 SE2d 686) (2009) ("It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration.") (punctuation and footnote omitted).

found no weapon.

We note that, even after the backup officer arrived at the scene and the patrol officer had removed Nunnally from his vehicle and determined that Nunnally did not have a weapon on his person, the patrol officer admittedly did not engage in any traffic law enforcement. For example, he did not start writing any citation or warning. In fact, he testified afterward that he had "no idea" whether the driver's license information he had requested from dispatch had been made available to him by the time the backup unit arrived at the scene. Thus, the officer was asked, "So you kind of made the decision to not worry about the license at that time. Your priority was to wait for the officer to come with a drug dog?" The patrol officer responded, "Yes."

After the K-9 unit arrived and Nunnally was removed from his vehicle and his person was checked for weapons, the record shows, the patrol officer next asked Nunnally for consent to search his vehicle.[16] When Nunnally refused, the patrol officer instructed the backup officer (a police canine handler) to walk the dog around Nunnally's car to sniff for the odor of narcotics. The patrol officer was later asked, "So basically, whether Mr. Nunnally consented or not, you were going to have that dog walk around the car." The officer responded, "Absolutely."

However, the sole justification for the patrol officer stopping Nunnally's vehicle was his failure to use his turn signal. As noted above, "[u]nder *Terry*, an officer's actions taken during a valid traffic stop must be reasonably related in scope to the circumstances which justified the stop in the first place, and limited in duration to the time reasonably necessary to accomplish the purpose of the stop."[17] "The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning."[18]

Pretermitting whether it was permissible for the patrol officer to prolong the traffic stop to await the arrival of a backup unit for safety purposes, we conclude that the state failed to present to the trial court evidence authorizing a determination that the later detention to allow for the dog sniff was lawful.[19] There was no evidence that,

---

[16] See *Salmeron*, supra (Fourth Amendment is not violated when, during valid traffic stop, officer questions driver or occupants of vehicle and requests consent to conduct a search); *Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005) (out of concern for safety, an officer making a traffic stop may also order driver and any passengers out of vehicle).

[17] *Williams*, supra at 202 (citations omitted); see *Smith*, supra.

[18] *Salmeron*, supra (citation and punctuation omitted).

[19] See OCGA § 17-5-30 (b) (pertinently providing that "the burden of proving that the search and seizure were lawful shall be on the state"); *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005) (state has burden to establish existence of circumstances constituting

once the K-9 unit arrived, either police officer diligently pursued a means of investigation that was likely to confirm or dispel quickly any suspicion related to the observed traffic infractions. Indeed, neither officer so claimed. Rather, the patrol officer acknowledged that, with the K-9 unit at the scene, he turned his attention to a search of Nunnally's car, which search included executing his earlier-formed plan to employ the drug dog to sniff the car's exterior (if Nunnally withheld consent). The purpose of the traffic stop — to enforce the laws of the roadway and to investigate Nunnally's manner of driving with the intent to issue a citation or warning — was thereby temporarily abandoned. Under these circumstances, there was no evidence that the investigative detention of Nunnally lasted "no longer than [was] necessary to effectuate the purpose of the stop" and no evidence that the scope of Nunnally's detention was "carefully tailored to its underlying justification."[20]

Nor was any evidence adduced that the prolonged detention was justified by a reasonable, articulable suspicion of other criminal activity.[21] When the K-9 unit arrived, Nunnally was ordered out of his vehicle; a pat-down of his person revealed neither weapon nor contraband. Further, the patrol officer's earlier perception that Nunnally was nervous, gleaned from his fidgety hand movements and not looking the officer in the eye, did not support a finding of reasonable, articulable suspicion that would have justified prolonging the detention.[22] Indeed, the officer never claimed so; his roadside investigation for purposes of traffic law enforcement was admittedly suspended while he pursued a drug law investigation. The resulting

---

exception to general prohibition against warrantless searches and seizures), citing OCGA § 17-5-30 (b)).

[20] *Smith*, supra.

[21] See *Bell v. State*, 295 Ga. App. 607, 609-610 (2) (672 SE2d 675) (2009) (*Terry* recognizes that, if there is a reasonable suspicion of criminal wrongdoing, based upon specific and articulable facts from which it can be determined that the action of the police officer is not arbitrary or harassing, the police officer may make a brief, investigatory detention of the individual while obtaining more information); *Boyd*, supra at 457-458 (1) (developments that occurred after the vehicle was validly stopped provided the officers with a reasonable basis to suspect that the passenger in the stopped vehicle was hiding illegal drugs on his person; thus, the officers had a basis independent of the traffic stop to briefly detain the passenger pursuant to *Terry* to investigate their reasonable suspicion of other criminal activity by summoning and employing a drug-sniffing dog).

[22] See *Bell*, supra (nervousness, perceived from driver's refusal to make eye contact with officers, together with driver's "dry mouth," did not constitute a particularized and objective basis for officers to suspect that motorist possessed contraband); *Payne v. State*, 244 Ga. App. 734, 739-743 (4), (5) (536 SE2d 791) (2000) (deputy's testimony — that the stopped driver, inter alia, was nervous, had "shaking" hands, dropped items from his wallet, would not "look me in the eye," and was "shuffling around" — showed no particularized and objective basis for suspecting that driver was, or was about to be, engaged in criminal activity; thus, driver's detention was unlawful).

detention was unlawful;[23] the marijuana, found as a result of the drug dog's alert on Nunnally's car during that time, constituted fruit of an illegal seizure.

In its order denying Nunnally's motion for new trial, the trial court revealed its basis for not suppressing the drug evidence.[24] It pointed out that, from the time the patrol officer stopped Nunnally until the drug dog arrived, approximately eight minutes elapsed. The court concluded that this detention was constitutional, in light of cases such as *Boyd v. State*,[25] *State v. Williams*,[26] and *Williams v. State*,[27] which upheld longer detentions.

Critical to each of those decisions, however, was evidence either that, after the stop of the vehicle, the police diligently pursued a means of investigation likely to confirm or dispel their suspicions regarding a traffic infraction or that, during the course of a valid traffic stop, information developed that provided a reasonable, articulable suspicion to prolong the detention beyond the time reasonably required for completion of the traffic stop.[28] No such

---

[23] See *Bell*, supra at 610 (officers impermissibly exceeded scope of initial traffic stop when, due to suspicions raised by driver's perceived nervousness, the officers detained travelers to await the arrival of a K-9 unit); *Cuaresma v. State*, 292 Ga. App. 43, 46-47 (2) (663 SE2d 396) (2008) (police officer who stops a motorist for traffic violation is not permitted to "expand the detention into a fishing expedition for evidence of unrelated offenses"; thus, where officers had no particularized, objective basis for suspecting stopped driver of other criminal activity, yet decided to conduct a drug investigation rather than ticket driver and release him, consent to search driver's vehicle that was obtained during unlawful detention was invalid); *State v. Blair*, 239 Ga. App. 340, 342 (521 SE2d 380) (1999) (affirming grant of motion to suppress where "officer abandoned [registration and license] investigation and detained the occupants of the car in order to conduct a search for drugs") (citation omitted). Compare *Caballes*, supra at 410 (dog sniff conducted during lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment); *Barnett v. State*, 275 Ga. App. 464, 466 (2) (620 SE2d 663) (2005) (finding no prolongation of the valid traffic stop to enable drug dog to conduct open air search around stopped vehicle, where dog was walked around car and alerted before the results of the requested driver's license check were returned to the patrol officer); *Becoats*, supra at 770-771 (traffic stop was not impermissibly expanded to allow for drug dog sniff, where dog arrived and alerted on the vehicle while motorist was validly detained due to the patrol officer being engaged in checking his license).

[24] See generally *Miller v. State*, 288 Ga. 286, 287 (1) (702 SE2d 888) (2010) (instructing that a court reviewing ruling on motion to suppress must focus on facts found by the trial court in its order, because the trial court sits as the trier of fact).

[25] Supra.

[26] Supra.

[27] 233 Ga. App. 70 (503 SE2d 324) (1998).

[28] See *Boyd*, supra at 455-458 (1) (holding that dog sniff was not conducted during an unlawful detention, even though stopped passenger was detained for about 15 minutes before dog arrived, where the police had a basis independent of the traffic violation to briefly detain the passenger); *Williams*, 264 Ga. App. at 200-204 (holding that the consent to search was voluntary and not the product of an illegally expanded traffic stop, even though consent did not occur until about 26 minutes after the vehicle was stopped, where the record showed no basis for concluding that officer did not diligently pursue the traffic investigation or that he postponed writing the traffic ticket while engaging in activity that unreasonably expanded the

evidence was presented in this case.

Because the marijuana evidence should have been suppressed, Nunnally's conviction of possession of less than one ounce of marijuana is reversed.

*Judgment affirmed in part and reversed in part. Andrews and McFadden, JJ., concur.*

DECIDED JUNE 20, 2011.

*Virginia L. Garrard*, for appellant.

*Layla H. Zon, District Attorney, Kimberly M. Minicozzi, Assistant District Attorney*, for appellee.

---

duration or scope of the stop); *Williams*, 233 Ga. App. at 71-72 (1) (holding that the consent to search was not the product of an illegally expanded traffic stop, even though consent did not occur until about 35 minutes after the vehicle was stopped, where the record showed that the officer was diligently pursuing the traffic investigation throughout that time).