**SECOND DIVISION
MILLER, P. J.,
MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 2, 2024**

# In the Court of Appeals of Georgia

A24A0037. THE STATE v. CALDWELL.

MILLER, Presiding Judge.

Following a traffic stop, Tasha Caldwell was charged with possession of a firearm during the commission of a felony and violation of the Georgia Controlled Substances Act. The State appeals from the trial court's order granting Caldwell's motion to suppress and the order denying its motion for reconsideration, arguing that the trial court erred by (1) determining that law enforcement lacked probable cause to search the vehicle; (2) concluding that the driver's consent to search did not extend to all containers in the vehicle; (3) ruling that Caldwell did not consent to a search of the vehicle; (4) concluding that law enforcement acted improperly by requesting identification; (5) determining that law enforcement cannot order passengers to exit

a vehicle; and (6) concluding that the consent to search the vehicle was the product of an illegal detention. For the reasons that follow, we affirm the trial court's order granting Caldwell's motion to suppress.

The following principles guide our review in this matter:

> In a hearing on a motion to suppress, the trial court sits as the trier of fact and its findings are analogous to a jury verdict. Accordingly, we defer to the trial court's credibility determinations and will not disturb its factual findings in the absence of clear error. And when reviewing the grant or denial of a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. Additionally, as a general rule, appellate courts must limit their consideration of the disputed facts to those expressly found by the trial court. An appellate court may, however, consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape. Finally, although we defer to the trial court's factfinding, we owe no deference to the trial court's legal conclusions. Instead, we independently apply the law to the facts as found by the trial court.

(Citation omitted.) *State v. Bly*, 367 Ga. App. 786, 787 (888 SE2d 593) (2023).

So viewed, the evidentiary record, which includes the responding officer's testimony and video footage of the traffic stop, shows the following. On April 9, 2021,

Deputy Reece of the Cherokee County Sheriff's Office initiated a traffic stop of a vehicle after observing that the driver was not wearing his seatbelt. Deputy Reece approached the vehicle and made contact with Daniel Murray, the driver, and Caldwell, who was seated in the front passenger's seat. As Deputy Reece requested Murray's and Caldwell's driver's licenses, he noticed that Murray's hands shook "uncontrollably." Deputy Reece noticed that the car had an out-of-state license plate, so after he obtained the driver's licenses, he asked them if they were Georgia residents, and Murray said that he and Caldwell had recently relocated to Georgia from Indiana. Deputy Reece asked Murray whether marijuana was legal in Indiana and whether he had "anything in the car." He then asked Murray for consent to search the vehicle, and Murray replied, "if you want to," which all occurred less than two minutes after the traffic stop. Deputy Reece asked Murray about his "pot" sunglasses that apparently had depictions or drawings of marijuana on them, when he had last "smoked weed," and whether there was a marijuana "roach" in the car. Deputy Reece, however, did not detect any odor of marijuana coming from the vehicle. Murray then reached into the front console of the vehicle and handed a roach to Deputy Reece. Deputy Reece removed Murray from the vehicle, and Murray

3

informed Deputy Reece that he was a convicted felon, that he had a firearm in his possession, and that there was a warrant for him from Indiana. Deputy Reece retrieved a firearm from Murray's waistband, secured the firearm in his patrol vehicle, and requested that Caldwell exit the vehicle, which all occurred within five minutes of the traffic stop. At roughly five minutes into the traffic stop, Deputy Reece went to his vehicle and provided dispatch with Murray's and Caldwell's driver's licenses and the serial number for the firearm, and he entered information into a computer for roughly five minutes. Approximately 11 minutes after the beginning of the traffic stop, Deputy Reece searched the vehicle and recovered a firearm and Xanax pills from Caldwell's purse. The video footage shows that the search of Caldwell's purse occurred before dispatch provided a response to Deputy Reece with information regarding Murray and Caldwell.

Caldwell was indicted on one count of possession of a firearm during the commission of a felony (OCGA § 16-11-106) and one count of violation of the Georgia Controlled Substances Act (OCGA § 16-13-30 (a)).[1] Caldwell filed a motion to suppress, arguing that Deputy Reece abandoned the purpose of the investigation and

[1] Murray was charged with one count of possession of a firearm by a convicted felon (OCGA § 16-11-131 (b)) in the same indictment.

impermissibly prolonged the traffic stop, and thus the search of the vehicle and the items obtained were the result of an unlawful detention. Caldwell further argued that Deputy Reece lacked probable cause to search her purse and that Murray's consent to a search of the vehicle did not authorize a search of her purse. In response, the State contended that Deputy Reece did not unlawfully prolong the traffic stop, the consent to search the vehicle extended to all of the containers in the vehicle including Caldwell's purse, and the presence of the marijuana roach gave Deputy Reece probable cause to search the vehicle and its contents. The trial court granted Caldwell's motion to suppress after a hearing, determining that (1) Caldwell did not consent to the search of her purse, to which she had "unequivocal ownership" independent from Murray; (2) although Murray gave Deputy Reece marijuana from inside the vehicle, "which may have enabled [him]" to extend the stop as to Murray, Deputy Reece impermissibly extended the traffic stop as to Caldwell; and (3) the consent to search the vehicle was invalid because it was the product of an unlawful detention. The State filed a motion for reconsideration, which the trial court summarily denied after another hearing. This appeal followed.

1. The State argues, among other things, that the trial court erred by determining that Caldwell's detention was unlawful.[2] We conclude that the trial court did not err by determining that Deputy Reece unlawfully prolonged Caldwell's detention.

"[A] trial court's conclusion that a traffic stop was unreasonably prolonged may often be a fact-intensive determination, but it is ultimately a holding of constitutional law that we review de novo." (Citation and punctuation omitted.) *Terry v. State*, 358 Ga. App. 195, 201 (1) (854 SE2d 366) (2021).

"It is axiomatic that a police officer who observes a traffic violation is authorized to conduct a traffic stop of the vehicle in question." (Citation omitted.) *Rush v. State*, 368 Ga. App. 827, 831 (2) (890 SE2d 883) (2023). "Moreover, when police make a traffic stop, as a practical matter, not only the driver of the stopped vehicle but also any passengers are detained during the stop and are considered 'seized' within the meaning of the Fourth Amendment." *State v. Williams*, 264 Ga. App. 199, 201 (590 SE2d 151) (2003). "Once a valid traffic stop has been effected, the Fourth Amendment prohibits the officer from unreasonably prolonging the stop

[2] We address the State's enumerations of error in a different order than what is presented in its brief.

6

beyond the time required to fulfill the purpose of the stop without a reasonable articulable suspicion of other illegal activity." (Citation omitted.) *Rush*, supra, 368 Ga. App. at 831-832 (1). And "[t]he United States Supreme Court has held unequivocally that the Fourth Amendment does not allow even a de minimis extension of a traffic stop beyond the investigation of the circumstances giving rise to the stop." (Citations omitted.) *Hill v. State*, 360 Ga. App. 683, 686 (1) (859 SE2d 891) (2021). Therefore,

> activities unrelated to the mission of the traffic stop must not extend the time of the stop at all, and such a prolongation of the stop is not permissible even if those activities are done in the middle of the stop. Thus, if an officer clearly diverts from conducting his traffic investigation to carry out a task unrelated to the mission of the stop, the traffic stop is unreasonably prolonged.

(Citations and punctuation omitted.) *McNeil v. State*, 362 Ga. App. 85, 89 (866 SE2d 249) (2021).

In light of the aforementioned principles, we conclude that Deputy Reece clearly diverted from the traffic investigation, which resulted in Caldwell's illegal detention. As recounted above, almost immediately after initiating a traffic stop on Murray's vehicle for Murray's seatbelt violation and obtaining Murray's and Caldwell's driver's licenses, Deputy Reece asked Murray whether marijuana was legal

7

in Indiana, whether Murray had "anything in the car," and for consent to search the vehicle. Deputy Reece then questioned Murray about his "pot" sunglasses, when he had last "smoked weed," and whether there was a marijuana "roach" in the car. At this point, Deputy Reece had not even begun to write a citation for the seatbelt violation nor did he run a check of the driver's licenses.[3] Moreover, Deputy Reece admitted that he did not detect any odor of marijuana coming from the vehicle at any time during the encounter, and there was no testimony that Deputy Reece otherwise observed any contraband in the vehicle prior to the questioning. Thus it is clear that after initiating the traffic stop for the seatbelt violation, Deputy Reece clearly diverted from his investigation of the traffic stop and instead pursued to question Murray about marijuana, a matter entirely unrelated to the purpose of the traffic stop. Therefore, the traffic stop was prolonged beyond the time necessary to fulfill the mission of issuing a citation for the seatbelt violation. See *McNeil*, supra, 363 Ga. App. at 88-90 (police office unlawfully prolonged traffic stop for following too closely where officer abandoned the task of writing a citation and instead questioned the defendant about her candle business); *Nunnally v. State*, 310 Ga. App. 183, 186-187 (2) (713 SE2d 408)

---

[3] Although Deputy Reece later ran a check of the driver's licenses, it is unclear if he ever issued a citation for the seatbelt violation.

(2011) (officer unreasonably prolonged traffic stop where he abandoned the investigation into a vehicle's registration and detained the passengers of the vehicle to search for drugs). Compare *Betancourt v. State*, 322 Ga. App. 201, 205 (2) (a) (744 SE2d 419) (2013) (traffic stop for a dark window tint was not unreasonably prolonged where the search for drugs occurred while the purpose of the traffic stop was being "actively pursu[ed]"). Consequently, the trial court correctly determined that Deputy Reece unlawfully prolonged Caldwell's detention. and therefore it properly granted Caldwell's motion to suppress.

2. The State further argues that the trial court erred by ruling that Caldwell did not consent to a search of the vehicle, law enforcement lacked probable cause to search the vehicle, Murray's consent to search the vehicle did not include a search of Caldwell's purse, Deputy Reece acted improperly by requesting identification, and Deputy Reece unlawfully asked Murray and Caldwell to exit the vehicle. In light of our holding in Division 1, it is unnecessary to address these claims of error.

Accordingly, for the foregoing reasons, we affirm the trial court's order granting Caldwell's motion to suppress.

*Judgment affirmed. Land, J., concurs. Markle, J., dissents.*

9

A24A0037. THE STATE v. CALDWELL.

MARKLE, Judge, dissenting.

The majority concludes that the officer conducting the stop unreasonably prolonged the detention, and thus any evidence found must be suppressed. Although I believe this is a close case, I would nevertheless reach the opposite conclusion. Therefore, I respectfully dissent.

The entire exchange — from the time the officer initiated the stop and asked for identification until the driver informed the officer he had an outstanding warrant — lasted less then three minutes. As the United States Supreme Court has explained, "[a]n officer's inquires into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (II) (B) (129 SCt 781, 172 LE2d 694) (2009) (emphasis added). Rather, "the question is whether the detention was appreciably prolonged, considering the detention as a whole, and keeping in mind that the touchstone of our inquiry is reasonableness." (Citation and punctuation omitted.) *Rodriguez v. State*, 295 Ga. 362, 369-370 (2) (b) (761 SE2d 19) (2014).

As we have explained,

> a reasonable time to conduct a traffic stop includes the time necessary for the officer to run a computer check on the validity of the driver's license and registration, and to check for outstanding warrants and/or criminal histories on the driver and other occupants. The law further allows the officer to question the vehicle's driver and/or its occupants during the course of the stop, *and even to lawfully ask questions unrelated to the purpose of a valid traffic stop*, so long as the questioning does not unreasonably prolong the detention.

(Citation omitted; emphasis supplied.) *Rush v. State*, 368 Ga. App. 827, 832 (2) (890 SE2d 883) (2023); see also *State v. Robusto*, 348 Ga. App. 579, 582-583 (824 SE2d 37) (after stopping defendant for seat-belt violation, officer was "certainly authorized to make a reasonable inquiry and investigation.") (citation omitted). Based on the brief nature of the stop, during which the officer was authorized to check the occupants' identification and ask questions, I would not conclude the detention was unreasonable. Therefore, I respectfully dissent.

2